UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGEY FIRSOV,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SCANDINAVIAN AIRLINES SYSTEM DENMARK-NORWAY-SWEDEN,<br><br>　　　　　Defendant. | Case No. 25-cv-03691-EMC<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SANCTIONS, PLAINTIFF'S MOTION TO STRIKE, AND PLAINTIFF'S MOTION FOR SANCTIONS**<br><br>Docket Nos. 69, 76, 77 |

　　　　Plaintiff Sergey Firsov is a serial litigator, both in federal and state court.  He has already been declared a vexatious litigant in state court.[1]  In federal court, Mr. Firsov has filed lawsuits against, *inter alia*, a number of airlines, typically for relatively minor issues.  In this case, he has sued Scandinavian Airlines System ("SAS").  (He initially sued the wrong entity: Scandinavian Airlines of North America ("SANA").)  The factual predicates underlying this lawsuit are as follows: (1) on one international flight, Mr. Firsov was served a vegetarian meal instead of a chicken meal and then had to pay if he wanted more than one drink; and (2) on a different international flight, there was something wrong with the air conditioner which made it too dry and affected both him and his dogs (who were in the cabin area).  Now pending before the Court are three motions: (1) SANA/SAS's motion for Rule 11 sanctions; (2) Mr. Firsov's motion to strike the Rule 11 motion; and (3) Mr. Firsov's motion for sanctions (in which he essentially asks for

---

[1] The Judicial Council of California maintains a list of persons who have been declared vexatious litigants.  That list reflects that a superior court in Santa Clara designated Mr. Firsov a vexatious litigant in Case No. 20CV368660 in November 2020.  *See* https://courts.ca.gov/system/files/file/vexlit.pdf (last visited 12/12/2025).

1   defense counsel to be sanctioned for filing the Rule 11 motion).

2       Having considered the parties' briefs and accompanying submissions, the Court finds these
3   matters suitable for resolution without oral argument. The hearing on the motions is therefore
4   **VACATED**. SANA/SAS's motion for sanctions is **DENIED**, as are Mr. Firsov's motion to strike
5   and motion for sanctions.

### I.   FACTUAL & PROCEDURAL BACKGROUND

In the FAC, Mr. Firsov alleges as follows.

On January 30, 2025, Mr. Firsov was on a SAS flight from San Francisco to Copenhagen. Meals were served on the flight. The airline appeared to run out of chicken meals before he was served, and he was given a vegetarian meal. Later, when Mr. Firsov went to the bathroom, he saw the flight crew eating chicken meals. The crew rejected his request for a chicken meal, claiming that it was for internal use. Then, Mr. Firsov asked for a drink but they told him that only one free drink was allowed. *See* FAC at 3. Mr. Firsov asserts that he was hungry and thirsty for the whole flight (an international one) and that his health was damaged because "he is [a] man and required to eat meat/fish everyday." FAC at 5. According to Mr. Firsov, he also suffered emotional distress. *See* FAC at 3.

On April 20, 2025, Mr. Firsov was on a different SAS flight from Copenhagen to Newfoundland, Canada. (The following day, he was scheduled for another flight, from Newfoundland to San Francisco.) The air on the flight was too dry, apparently because of the air conditioner. As a result, Mr. Firsov had "damaged health" and had to "recover in [a] wet climate." FAC at 4. Mr. Firsov claims that his dogs – who were also on the flight (in the cabin area) – also suffered damage to their health; in fact, he had to take them to a hospital in Canada after the plane landed. Mr. Firsov further claims that both he and his dogs suffered emotional distress. *See* FAC at 4.

Damages that Mr. Firsov seeks include the following: the cost of the dogs ($2,000 each), the cost of the airline tickets, the cost of the airline tickets for the dogs, compensation for emotional distress, the cost of the hospital bills, and punitive damages. *See* FAC at 5.

Based on, *inter alia*, the above, Mr. Firsov has asserted ten causes of action.

2

(1) **Liability pursuant to the Montreal Convention.** *See* https://2009-2017.state.gov/e/eb/rls/othr/ata/114157.htm (last visited 12/11/2025). The Montreal Convention "applies to all international carriage of persons, baggage or cargo performed by aircraft for reward."[2] Montreal Convention, art. 1(1). Under article 17, "[t]he carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention, art. 17(1). In addition, "[t]he carrier is liable for damage sustained in case of destruction or loss of, or of damage to, checked baggage upon condition only that the event which caused the destruction, loss or damage took place on board the aircraft or during any period within which the checked baggage was in the charge of the carrier. However, the carrier is not liable if and to the extent that the damage resulted from the inherent defect, quality or vice of the baggage. In the case of unchecked baggage, including personal items, the carrier is liable if the damage resulted from its fault or that of its servants or agents." Montreal Convention, art. 17(2). According to Mr. Firsov, he personally suffered harm arising from the events on the two SAS flights; also, on the second flight, his baggage – consisting of his dogs – was damaged.

(2) **Violation of the right to get information before the flight.** Mr. Firsov seems to

---

[2] The Convention defines international carriage as:

> any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transhipment, are situated either within the territories of two States Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party. Carriage between two points within the territory of a single State Party without an agreed stopping place within the territory of another State is not international carriage for the purposes of this Convention.

Montreal Convention, art. 1(2).

3

predicate this claim on the Montreal Convention, unidentified provisions in the International Health Regulations ("IHR"),[3] unidentified rules of the International Air Transport Association ("IATA"),[4] and the contract of carriage (presumably between him and SAS).  This claim is related to the first flight only (*i.e.*, events related to the vegetarian meal and the single free drink).

(3) **Fraud.**  This claim is related to the first flight only.  According to Mr. Firsov, SAS lied that there were no more chicken meals.  Also, Mr. Firsov suggests that SAS engaged in fraud because he was denied services that were promised (on food and drink) and SAS omitted the fact that he would be limited to one free drink.  *See* FAC at 7.

(4) **False advertising (in violation of California Business & Professions Code § 17500).**  Mr. Firsov seems to assert that SAS engaged in false advertising because it announced that chicken meals were available and then negligently stated that chicken meals were finished when they were not.

(5) **Violation of food safety and packaging and menu planning protocols.  Mr**. Firsov suggests that this claim is based on (a) "Annex 9 to the Chicago Convention 1944, concerning Facilitation, covers procedures to expedite the movement of aircraft and their contents, including supplies like catering, across borders"[5]; (b) Annex 6 of ICAO Rules (Operation of Aircraft) [which] regulates principles that airlines maintain safe

---

[3] The IHR appear to be maintained by the World Health Organization.  *See* https://www.who.int/health-topics/international-health-regulations/#tab=tab_1 (last visited 12/11/2025).  WHO's website states: "While disease outbreaks and other acute public health risks and events are often unpredictable and require a range of responses, the International Health Regulations (2005) (IHR) provide an overarching legal framework that defines States Parties' (countries') rights and obligations in managing public health risks, events and emergencies that have the potential to cross borders." *Id.*

[4] IATA's website states that it is "the trade association for the world's airlines, representing some 360 airlines comprising over 80% of global traffic.  We support many areas of aviation activity and help formulate industry policy on critical aviation issues."  https://www.iata.org/en/about/ (last visited 12/11/2025).

[5] The Chicago Convention is also known as the Convention on International Civil Aviation.  *See* https://www.icao.int/convention-international-civil-aviation-doc-7300 (last visited 12/5/2025).

4

and hygienic conditions for all aspects of the flight, including catering"[6]; and (c) unspecified "IATA standards [that] cover[] crucial aspects of in-flight catering." FAC at 9.

(6) **Violation of health and food safety codes (both federal and state).** Mr. Firsov suggests that the following laws have been violated: (a) FDA Food Code 3-301.11 and 3-306.11 (which relate to preventing contamination from hands and preventing contamination by consumers)[7]; (b) 14 C.F.R. § 121.578 (which relates to cabin ozone concentration); (c) California Health & Safety Code § 114079 (which relates to unused or returned food and minimizing waste and reducing food insecurity); (d) California Health & Safety Code § 113984 (which relates to food preparation, counter space, and protection); and (e) unspecified provisions in the IHR.

(7) **Breach of contract.** This claim covers both of the international flights (*i.e.*, the food incident and the air conditioner incident).

(8) **Negligence.** This claim relates to the second flight only (*i.e.*, related to the air conditioner).

(9) **Intentional infliction of emotional distress.** This claims relates to the first flight only (*i.e.*, related to the food).

---

[6] ICAO is the International Civil Aviation Organization. Per its website, ICAO is "a United Nations agency which helps 193 countries to cooperate together and share their skies to their mutual benefit." https://www.icao.int/about-icao (last visited 12/11/2025). It appears to have originated with the Chicago Convention. *See* https://www.icao.int/convention-international-civil-aviation-doc-7300.

Annex 9 and Annex 6 – referenced by Mr. Firsov in the FAC – appear to be annexes that are part of the Chicago Convention. *See* https://www.icao.int/facilitation-programmes/Annex9 (last visited 12/11/2025) ("Annex 9 - Facilitation is based on 10 articles of the Chicago Convention . . . which require that the civil aviation community comply with laws governing the inspection of aircraft, cargo and passengers by authorities concerned with customs, immigration, agriculture and public health."); https://ffac.ch/wp-content/uploads/2020/09/ICAO-Annex-6-Operation-of-Aircraft-Part-I-International-commercial-air-transport.pdf (last visited 12/11/2025) ("The purpose of Annex 6, Part I, is to contribute to the safety of international air navigation by providing criteria of safe operating practice and to contribute to the efficiency and regularity of international air navigation by encouraging States to facilitate the passage over their territories of aeroplanes in international commercial air transport belonging to other States that operate in conformity with such Standards.").

[7] *See* https://www.fda.gov/media/164194/download (last visited 12/11/2025).

5

1  (10) **Violation of California business registration laws.** Here, Mr. Firsov contends that SAS failed to register as a business under California law and that such registration was needed in order to fly out of California.

## II.   DISCUSSION

A.   Legal Standard

Under Federal Rule of Civil Procedure 11, both attorneys and unrepresented parties have

> a duty to certify that they have read any pleadings or motions they file with the court and that such pleadings and motions are well-grounded in fact, have a colorable basis in law, and are not filed for an improper purpose. If a court finds a violation of this duty, it may impose appropriate sanctions to deter similar conduct. However, "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." Rule 11 sanctions should be reserved for the "rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose."

*Firsov v. United Airlines, Inc.*, No. 5:25-cv-03784-BLF, 2025 U.S. Dist. LEXIS 234090, at *2-3 (N.D. Cal. Dec. 1, 2025). "Rule 11(c), however, provides a 21-day safe harbor period. Under this provision, Rule 11 sanctions may not be imposed if the challenged claim is withdrawn within 21 days after service of the sanctions motion." *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 638-39 (9th Cir. 2010).

B.   SANA/SAS's Motion for Sanctions

In the pending motion, SANA/SAS asks for the following sanctions: (1) termination of Mr. Firsov's lawsuit on the basis that the first amended complaint ("FAC") is frivolous and/or brought for an improper purpose; (2) a declaration that Mr. Firsov is a vexatious litigant and an order imposing a prefiling review of any future consumer lawsuits by Mr. Firsov; and (3) an award of over $12,000 in attorneys' fees.

To the extent Mr. Firsov has moved to strike the motion for sanctions, that motion is denied. First, there are no excess pages. The notice of motion and the table of contents and table of authorities are not the brief. Second, Mr. Firsov cites no authority to support his position that a specially appearing party cannot ask for Rule 11 sanctions. Finally, the fact that the Court held that a previous request for sanctions was premature does not mean that this motion is likewise

premature.

### 1. Terminating Sanctions

SANA/SAS asks that the Court terminate this lawsuit on the basis that the FAC is frivolous and/or brought for an improper purpose. The Court addresses first SANA/SAS's contention that the FAC is frivolous.

Although Mr. Firsov has asserted a number of claims for relief, SANA/SAS focuses on the claim for liability under the Montreal Convention. It has done so on the basis that this cause of action preempts all other causes of action.

For purposes of the pending motion, the Court assumes that the Montreal Convention does preempt all other causes of action. *See* Montreal Convention, art. 29 ("In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights."); *Agmon v. Jetblue Airways Corp.*, No. 24-CV-2393 (PKC) (CHK), 2025 U.S. Dist. LEXIS 189167, at *8 (E.D.N.Y. Sept. 25, 2025) ("Article 29 provides that the Montreal Convention preempts a claim arising under federal, state, or local law if the claim falls within the Convention's substantive scope. . . . More specifically, a passenger's claim for injury during international travel is within the Convention's substantive scope, and is thus preempted, if those allegations occurred onboard an aircraft or during embarking or disembarking."). *See, e.g.*, *Tavantzis v. Am. Airlines, Inc.*, No. 23-cv-05607-NW, 2025 U.S. Dist. LEXIS 87593, at *11 (N.D. Cal. May 7, 2025) (holding that plaintiffs' claim for breach of contract was preempted). *Compare In re Nig. Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 456 (E.D.N.Y. 2007) (noting that "some courts have found fraud and negligence claims preempted by the Convention, . . . where those claims arose from injuries within the Convention's substantive scope, e.g., personal injuries resulting from accidents (Article 17), lost or damaged luggage (Article 18), or delay (Article 19)").

But even assuming such, the Court holds that the claim for liability under the Montreal Convention is not frivolous. SANA/SAS argues that the claim based on the food and drink is

7

frivolous because the Montreal Convention does not allow for purely emotional distress damages.[8] *See* Montreal Convention, art. 17, § 1 (providing that "[t]he carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking"). SANA/SAS is correct that courts have generally held that purely emotional distress damages are not available under the Montreal Convention. They have done so in large part based on the Supreme Court's holding that the predecessor Warsaw Convention did not allow for purely emotional distress damages.[9] *See Eastern Airlines v. Floyd*, 499 U.S. 530, 552-53 (1991) ("conclud[ing] that an air carrier cannot be held liable under Article 17 when an accident has not caused a passenger to suffer death, physical injury, or physical manifestation of injury"; "we express no view as to whether passengers can recover for mental injuries that are accompanied by physical injuries" because "respondents do not allege physical injury or physical manifestation of injury").

Nevertheless, the Court cannot say that Mr. Firsov's Montreal Convention claim based on the food/drink is frivolous given that the FAC contains allegations suggesting that Mr. Firsov was physically affected as a result of the airline's actions – *i.e.*, that he was hungry and thirsty, especially because he was on an international flight. To be clear, in finding that the claim is not frivolous, the Court is not holding that the claim would survive a motion to dismiss. At least one court has held that food deprivation and dehydration is not a bodily injury for purposes of the

---

[8] SANA/SAS suggests that this Court has already held that the Convention does not allow for purely emotional distress damages. That is incorrect. The Court merely observed in its prior order that "Mr. Firsov may not be seeking purely emotional distress damages." Docket No. 34 (Order at 4).

[9] "The Montreal Convention entered into force in the United States on November 4, 2003, updating and replacing the uniform system of liability for international air carriers previously established by the Warsaw Convention.'" *Best v. BWIA W. Indies Airways Ltd.*, 581 F. Supp. 2d 359, 362 (E.D.N.Y. 2008); *see also Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004) ("The Montreal Convention is not an amendment to the Warsaw Convention. Rather, the Montreal Convention is an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention."). The Second Circuit has noted that the main aim of the Warsaw Convention was to limit the liability of air carriers so as to foster the growth of the commercial aviation industry, whereas the Montreal Convention also recognized the importance of protecting consumers. *See id.* However, the language of Article 17 in the Warsaw Convention and Article 17 in the Montreal Convention (at least as translated to English) is similar.

Montreal Convention. *See Ojide v. Air France*, No. 17-cv-3224 (KBF), 2017 U.S. Dist. LEXIS 162419, *5 (S.D.N.Y. Oct. 2, 2017) ("Plaintiffs' alleged injuries in their second claim include dehydration, deprivation of food, and various forms of emotional distress. None of these is a bodily injury' as defined under Article 17 of the Montreal Convention.").

As for the Montreal Convention claim based on the air conditioner, here as well the Court does not find that claim is frivolous (although it does not opine on whether the claim would survive a motion to dismiss). While Mr. Firsov's allegation that he suffered bodily injury is conclusory, he does allege that his dogs also suffered, so much so that he had to take them to the hospital. The Montreal Convention provides for damage to baggage, *see* Montreal Convention, art. 17, § 2 (providing that, "[i]n the case of unchecked baggage, the carrier is liable if the damage resulted from its fault or that of its servants or agents"), and arguably Mr. Firsov's dogs should be deemed baggage for purposes of the Convention. *See* https://curia.europa.eu/jcms/upload/docs/application/pdf/2025-10/cp250133en.pdf (last visited 12/12/2025) (press release of the Court of Justice of the European Union, dated October 16, 2025) (upon a referral from a Spanish court, ruling that pets can be classified as baggage on flights under the Montreal Convention; "[t]he dog escaped while being carried to the plane and could not be recovered"); *cf. Aya v. Lan Cargo, S.A.*, No. 14-22260-CIV-SEITZ, 2014 U.S. Dist. LEXIS 134122, *2 (S.D. Fla. Sept. 18, 2014) ("Plaintiff's dog is neither a passenger nor the baggage of a passenger. Plaintiff's dog was travelling alone and so is considered cargo.").

SANA/SAS argues that there is still a venue/jurisdiction problem for the air conditioner-related claim because any injury or damage occurred on a flight from Denmark to Canada. *See* Mot. at 2 ("[T]his forum has no connection to this particular claim, which pertains to a flight from Copenhagen to Toronto, and therefore this is an improper venue without jurisdiction to adjudicate the claims."); Mot. at 21 ("[B]ecause Plaintiff alleges that the incident in which the air conditioner malfunctioned occurred on a flight from Copenhagen to Toronto, with no connection to the State of California, Plaintiff will not be able to establish personal jurisdiction over SAS in connection with these claims."). Similar to above, the Court does not rule here on whether it would dismiss for improper venue or lack of personal jurisdiction. It simply finds that Mr. Firsov bringing the air

9

conditioner-related claim in this forum is not frivolous. Mr. Firsov seems to be relying on Article 33 of the Montreal Convention as conferring venue and/or jurisdiction,[10] but the Convention contemplates that nation-states may impose their own venue and jurisdictional requirements. *See Nat'l Union Fire Ins. Co. of Pitt., P.A. v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66, 74 (2d Cir. 2023) (noting that, although Article 33 and Article 46 of the Convention "state that actions '*must* be brought in one of the specified fora, they do not state that the courts of those fora must entertain such actions without regard for other potential barriers to jurisdiction"; "while the Montreal Convention permits claims arising under the treaty to be brought in particular nations, it does not guarantee plaintiffs the unconditional right to litigate in those nations' courts" and, rather, "expressly leaves room for nation-states to impose their own venue, jurisdictional, or other procedural requirements") (emphasis in original). Although frivolousness is an objective assessment that applies to all litigants, a party's pro se status may factor into the analysis. *See, e.g.*, Fed. R. Civ. P. 11, 1983 advisory committee notes ("Amended Rule 11 continues to apply to anyone who signs a pleading, motion, or other paper. Although the standard is the same for unrepresented parties, who are obliged themselves to sign the pleadings, the court has sufficient discretion to take account of the special circumstances that often arise in pro se situations."); *Business Guides v. Chromatic Comms. Enters.*, 892 F.2d 802, 811 (9th Cir. 1989) ("Mention of the court's 'discretion' [in the advisory committee notes] merely acknowledges that (1) *what is objectively reasonable for a pro se litigant and for an attorney may not be the same*, and (2) the pro se status of a violator may be relevant to the court's discretionary choice of the appropriate sanction in a given case.") (emphasis added). The Court concludes that, although Mr. Firsov's position on venue/jurisdiction is erroneous, it will not impose terminating sanctions; the legal

---

[10] *See* Montreal Convention, art. 33, § 1 ("An action for damages must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of business through which the contract has been made or before the court at the place of destination."); *Saeed Hassan v. Virgin Atl. Airlines*, No. 1:24-CV-3117-SEG, 2025 U.S. Dist. LEXIS 226035, *7-8 (N.D. Ga. Mar. 28, 2025) ("The Montreal Convention's third jurisdictional provision permits plaintiffs to bring suit where the carrier 'has a place of business through which the contract has been made[.].' 'The "place of business through which the contract has been made" refers to the "location where the passenger tickets at issue were purchased."'").

10

1    analysis is subtle.  Moreover, even if this part of the Montreal Convention claim (air conditioning)

2    were frivolous (based on lack of venue/jurisdiction), terminating sanctions are not warranted since

3    the other part of the claim (food/drink) was not frivolous.

4          Because the Montreal Convention claim is not frivolous, SANA/SAS's contention that the

5    FAC was also brought for an improper purpose is not persuasive.  Accordingly, the Court denies

6    SANA/SAS's request for terminating sanctions.  That being said, the Court is not unsympathetic

7    to SANA/SAS's assertion that Mr. Firsov has been multiplying proceedings unnecessarily and/or

8    unreasonably.  If Mr. Firsov continues to litigate as he has – *e.g.*, by repeatedly filing motions to

9    reconsider, motions for sanctions, or motions to strike – then SANA/SAS will have a stronger

10   record to argue that Mr. Firsov has brought this case, largely to harass or obtain a nuisance value

11   settlement.

12         2.      Prefiling Review Sanction

13         The next sanction sought by SANA/SAS is a declaration that Mr. Firsov is a vexatious

14   litigant and imposition of a prefiling review requirement.  Because the Court is not dismissing the

15   case at this juncture, it denies the request for this sanction without prejudice.

16         3.      Monetary Sanctions

17         Finally, SANA/SAS ask for monetary sanctions – specifically, $12,347.50, representing

18   the attorneys' fees incurred as of October 27, 2025 (the date that SANA/SAS filed the pending

19   Rule 11 motion on Mr. Firsov).  The Court deems this request moot because, approximately a

20   week after SANA/SAS served the motion on Mr. Firsov, the Court issued monetary sanctions

21   against Mr. Firsov after reviewing his conduct in the lawsuit up through that date.  The Court

22   acknowledged that Mr. Firsov had engaged in problematic conduct but decided to sanction him

23   only for conduct related to a motion to strike he had filed.  *See* Docket No. 59 (Order at 4).  The

24   Court sees no reason to revisit that ruling.

25         The only issue remaining is the amount of the monetary sanctions.  SANA/SAS submitted

26   papers reflecting that it "incurred $722.00 in attorney's fees in connection with drafting its

27   Opposition to Plaintiff's Motion to Strike."  *See* Docket No. 60 (Def.'s Br. at 2).  This sum

28   represents 1.90 hours of attorney time at an hourly rate of $380.  *See* Docket No. 60-1 (Nowinski

Decl. ¶¶ 4-5). Mr. Firsov was required to submit a response to the fee claimed by, at the latest, November 20, 2025. He failed to do so. The Court did not receive a response until December 4, 2025, and Mr. Firsov did not provide any explanation for his failure to comply with the Court deadlines. In light of these circumstances, the Court finds any opposition to the fee amount waived. Furthermore, even if the Court were to consider Mr. Firsov's brief, it is not persuasive on the merits. What an attorney earns as a salary is a different matter from what is charged to a client. The hourly rate claimed is also reasonable.

Accordingly, the Court hereby reaffirms its prior ruling that SANA/SAS is entitled to a monetary sanction and now awards SANA/SAS $722. Mr. Firsov is ordered to meet and confer with defense counsel to determine how best to convey these funds to SANA/SAS. The payment of $722 to SANA/SAS should be made no later than December 31, 2025. If Mr. Firsov fails to pay, then he risks being held in civil contempt.

C.  Mr. Firsov's Motion for Sanctions

As for Mr. Firsov's motion for sanctions, it is denied. First, it is not clear that he complied with the safe harbor before filing his motion.

Second, Mr. Firsov's motion lacks merit for many of the same reasons his motion to strike lacks merit. For example, SANA/SAS's motion for sanctions does not have excess pages, and Mr. Firsov cites no authority to support his position that sanctions cannot be sought by a specially appearing party. That SANA/SAS's prior motion for sanctions was premature does not mean that a subsequent motion is premature, even if predicated on some of the same facts. Finally, is not unreasonable for SANA/SAS to discuss cases brought by one of Mr. Firsov's wives, especially given the similar litigation and related tactics.

### III.  CONCLUSION

For the foregoing reasons, the Court denies SANA/SAS's motion for sanctions, as well as Mr. Firsov's motion to strike and his motion for sanctions. However, the Court reaffirms its prior order issuing sanctions against Mr. Firsov and awards SANA/SAS monetary sanctions in the amount of $722.

In addition, because this case has involved unnecessary litigation, the Court now orders as

follows.  The Court temporarily **STAYS** the briefing and hearing schedule on Mr. Firsov's motion for leave to amend, in which he seeks to add a claim for retaliation.  The Court also orders SAS to file an answer or a motion to dismiss in response to the FAC by December 31, 2025.[11]  If SAS files a motion to dismiss, it should notice the motion for a hearing date of February 5, 2026 (*i.e.*, the date that the Court was scheduled to hear Mr. Firsov's motion for leave to amend).  **NO** further motions shall be filed by either party until the Court adjudicates the motion to dismiss.

This order disposes of Docket Nos. 69, 76, and 77.

**IT IS SO ORDERED**.

Dated: December 15, 2025

_____
EDWARD M. CHEN
United States District Judge

---

[11] In its papers, SANA/SAS represents that it has until January 5, 2026, to respond to the FAC because it executed a waiver and acknowledgment of service.  Even assuming that is the case, SANA/SAS will not be prejudiced by the Court advancing the response date by less than a week.